**Opinion issued February 21, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00105-CR

_____

## JOSEPH MICHAEL NEVEDOMSKY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

## On Appeal from the County Criminal Court of Law No. 10
## Harris County, Texas
## Trial Court Case No. 1747280

---

## MEMORANDUM OPINION

Appellant Joseph Michael Nevedomsky was charged with misdemeanor driving while intoxicated (DWI), second offender. Following the trial court's denial of his motion to suppress, Nevedomsky pleaded nolo contendere and was

sentenced to one year confinement in county jail, which was suspended, placed on two years community supervision, and fined $500. In his sole point of error, Nevedomsky contends that the trial court abused its discretion in denying his motion to suppress because the arresting officer lacked reasonable suspicion for the stop. We affirm.

## Background

At approximately 9:30 p.m. on the evening of December 11, 2010, Trooper Martin Gens, a twenty-seven year officer with the Texas Department of Public Safety, Highway Patrol Service, was on patrol and traveling northbound on FM 2100 in northeast Harris County. Gens observed Joseph Nevedomsky's vehicle, which was also traveling northbound on FM 2100, drift onto the right improved shoulder several times. Gens, who had been involved in approximately 2000 DWI investigations, testified that he became suspicious because drifting from the main road to the shoulder several times could mean that the driver was intoxicated, talking or texting on a cell phone, or falling asleep. Gens followed Nevedomsky's vehicle to a traffic light at a nearby intersection. As Nevedomsky and Gens pulled up to the intersection, the traffic light was red. When the traffic light turned green, Nevedomsky hesitated at the intersection, for somewhere between five and thirty seconds, and then made a right-hand turn without signaling. Gens stopped his vehicle.

Nevedomsky was charged with misdemeanor DWI as a second offender. He filed a motion to suppress alleging that Gens lacked reasonable suspicion to stop him. The trial court held a hearing on Nevedomsky's motion, at which Gens testified that he stopped Nevedomsky because he drifted onto the shoulder, hesitated for thirty seconds at the green light, which he described as "not normal," and failed to signal. During cross-examination, Nevedomsky attempted to impeach Gens with his purportedly inconsistent prior testimony at the administrative license revocation (ALR) hearing. Nevedomsky asked Gens whether it was true that at the ALR hearing, he testified that Nevedomsky hesitated at the green light for five or six seconds, not thirty. Gens responded that he did not recall his testimony at the ALR hearing. Although Nevedomsky's counsel appeared to be reading from a transcript of the ALR hearing during his cross-examination of Gens, Nevedomsky did not offer any transcript of the ALR hearing into evidence. Nevedomsky also questioned Gens about the fact that Gens purportedly omitted mentioning Nevedomsky's failure to signal during the ALR hearing and failed to include Nevedomsky's failure to signal in the sworn officer's report he submitted at the ALR hearing. Gens first explained that he did not remember his testimony at the ALR hearing. He also said he did not have his offense report, which he prepared the night of the incident, in front of him during the ALR hearing. However, he explained that he had reviewed that offense report

3

before testifying at the suppression hearing and the report was consistent with his testimony at the suppression hearing.

The trial court found that Nevedomsky's hesitation at the green light, whether for five or thirty seconds, combined with his driving onto the shoulder several times and failure to signal before turning, gave Gens reasonable suspicion to stop Nevedomsky. The court further found that there was reasonable suspicion, even if Gens might have given inconsistent testimony at the ALR hearing, about Nevedomsky's failure to signal. Nevedomsky pleaded nolo contendere to the misdemeanor DWI charge, reserving his right to appeal the trial court's denial of his motion to suppress.

## Discussion

Nevedomsky argues the trial court should have granted his motion to suppress and asserts three reasons this court should reverse the judgment of the trial court. First, Nevedomsky urges this court to disregard the trial court's factual findings because the differences between Gens's testimony at the ALR hearing and his testimony at the suppression hearing demonstrate Gens was not credible. Second, he asserts that the stop was not based on anything other than Gens's "personal irritation" at Nevedomsky's lack of attention at the traffic light. Finally, Nevedomsky contends that there was no reasonable suspicion for the stop because the evidence merely showed that he drifted over onto the improved shoulder

4

slightly, and because he committed no traffic code violation. In response, the State contends that the stop was proper because the totality of the circumstances gave rise to an objectively reasonable belief that Nevedomsky was driving while intoxicated.

## A.     Standard of Review

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Weide v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we give almost total deference to the trial court's determination of historical facts if supported by the record. *Ford*, 158 S.W.3d at 493. But we review de novo the trial court's application of the law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

**B.    Applicable Law**

A police officer is permitted to stop and temporarily detain a person in order to conduct an investigation if the officer, based on his experience, has a reasonable suspicion that an individual is violating the law. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968); *Ford*, 158 S.W.3d at 492 (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)).  An officer has reasonable suspicion if he can point to "specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford*, 158 S.W.3d at 492 (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)).  The officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880).  Reasonable suspicion is determined by considering whether the officer had "some minimal level of objective justification for making the stop." *Id.* Because reasonable suspicion is an objective standard, we disregard any subjective intent of the officer in making the stop. *Ford*, 158 S.W.3d at 492*.*  We consider the totality of the circumstances when making a reasonable suspicion determination. *Id.* at 492–93.

6

## C. Analysis

Nevedomsky first urges this court to disregard the trial court's findings because Gens's testimony was not credible. Citing *Mendoza v. State*, 365 S.W.3d 666 (Tex. Crim. App. 2012), Nevedomsky asserts we need not slavishly defer to the trial court's factual findings. In that case, the Texas Court of Criminal Appeals explained that, rather than presuming or guessing what historical facts were found by the trial court, appellate courts should abate cases for the trial court to clarify ambiguous, contradictory, or incomplete findings. *Mendoza*, 365 S.W.3d at 671. We find *Mendoza* inapplicable because the trial court's findings are dispositive of the issues presented and are neither ambiguous nor contradictory.

As noted, the trial court is the sole judge of the weight and credibility of the evidence and we must give almost total deference to the trial court's findings of fact based on credibility if they are supported by the record. *See Weide*, 214 S.W.3d at 24–25. The trial court's factual findings in this case are supported by the record. Gens testified that he observed Nevedomsky's vehicle drift onto the shoulder at least three times. He also testified that Nevedomsky hesitated for approximately thirty seconds at a traffic light after it turned green before turning right without signaling. Although Gens acknowledged that his testimony at the ALR hearing may have been that Nevedomsky's hesitation at the green light lasted only "five or six seconds," he explained that he had no independent recollection of

7

his testimony at the ALR hearing. Gens also admitted that he did not mention Nevedomsky's failure to signal in the sworn officer's report he prepared for the ALR hearing. However, he explained that his preparation for and testimony at the ALR hearing was from memory and he did not have his offense report, which was prepared the night of Nevedomsky's arrest, available at the ALR hearing. Gens testified that his offense report detailed the reasons for the stop and was consistent with his testimony during the suppression hearing. The strongest legitimate view of the evidence supports the trial court's factual findings; therefore we afford them almost total deference and are left to consider whether the trial court properly applied the law to these facts. *See Castleberry*, 332 S.W.3d at 465; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

Nevedomsky asserts there was no reasonable suspicion for the stop because Gens was merely irritated at Nevedomsky's hesitation at the light and there was no evidence that Nevedomsky violated any traffic law. However, Nevedomsky's contention that the stop was based on Gens's "personal irritation" at Nevedomsky is not determinative of whether there was reasonable suspicion because reasonable suspicion is an objective standard, and we disregard any subjective intent of the officer in making the stop. *See Ford*, 158 S.W.3d at 492.

As to Nevedomsky's claim that no traffic law was violated, we note that Nevedomsky need not have violated a traffic ordinance in order for Gens to have reasonable suspicion to justify a stop. *See State v. Alderete*, 314 S.W.3d 469, 473 (Tex. App.—El Paso 2010, pet. ref'd) ("[T]here is no requirement that a traffic regulation must be violated in order for an officer to have sufficient reasonable suspicion to justify a stop of a vehicle."); *James v. State*, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref'd) ("Erratic or unsafe driving may furnish a sufficient basis for a reasonable suspicion that the driver is intoxicated even absent evidence of violation of a specific traffic law."). Instead, an officer may be justified in stopping a driver based on a reasonable suspicion that the driver is driving while intoxicated. *See Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007); *Alderete*, 314 S.W.3d at 473; *James*, 102 S.W.3d at 172.

Here, at approximately 9:30 p.m., Gens observed Nevedomsky's vehicle drift onto the improved shoulder several times. After following Nevedomsky's vehicle to an intersection, Gens observed Nevedomsky hesitate for several seconds at the intersection once the traffic light turned green. According to Gens, Nevedomsky then proceeded to make a right-hand turn without signaling. Gens, whose experience included approximately 2000 DWI investigations, testified that he was suspicious of Nevedomsky's driving and that these behaviors could be evidence of a number of things, including intoxication.

9

Considering the totality of the circumstances, we hold the trial court did not abuse its discretion when it concluded Gens had reasonable suspicion to stop Nevedomsky. In light of Gens's extensive experience with DWI investigations, Nevedomsky's drifting onto the shoulder, his hesitation at a green light for several seconds, and his failure to signal, it was rational for Gens to have inferred that Nevedomsky may have been intoxicated, thus justifying a temporary detention for further investigation. *See Curtis*, 238 S.W.3d at 280–81 (holding there was rational inference of intoxication where officers had training in detecting intoxicated drivers and defendant was observed weaving in and out of his lane several times, over a short distance, late at night, and officers therefore had reasonable suspicion of DWI); *Alderete*, 314 S.W.3d at 474 (holding that officers had reasonable suspicion that defendant was driving while intoxicated where officers had training and experience in investigating DWI offenses and defendant was observed continuously weaving within her lane for half mile in early morning hours); *James*, 102 S.W.3d at 172 (holding that officer, who stopped defendant because he believed her "driving faculties" were impaired, had reasonable suspicion that defendant was driving while intoxicated after he observed that she failed to signal as she entered highway, crossed center line, and then veered onto shoulder); *Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (finding that defendant's driving behavior, which consisted of

10

leaving bar at considerable rate of speed, pulling into gas station and leaving within matter of seconds, driving all over the roadway, and weaving between lanes, was sufficient to raise reasonable suspicion that defendant was driving while intoxicated). Gens articulated "something more than an inchoate and unparticularized suspicion or hunch" that gave rise to an objective justification for Nevedomsky's detention. *See Foster*, 326 S.W.3d at 614. Therefore, the trial court did not err by concluding that Gens had reasonable suspicion to stop Nevedomsky. We overrule Nevedomsky's sole point of error.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).