COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-09-00066-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Criminal Court at Law No. 1 |
| ANA MARIA ALDERETE, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20070C15355) |
| | § | |

**O P I N I O N**

The State appeals the trial court's order granting Ana Maria Alderete's motion to suppress. After reviewing the applicable law, we sustain the State's sole issue, reverse the order of the trial court, and remand for further proceedings.

**BACKGROUND**

Alderete was charged by information for the offense of driving while intoxicated. Subsequently, Alderete filed a motion to suppress, alleging the initial stop was unlawful. Alderete did not challenge any of the officers' actions after her vehicle was stopped.

At the suppression hearing, Officer Anthony Alegre testified that he is employed with the El Paso Police Department and has been so for a year and a half, that he is assigned to the patrol division, and that he has received training in the investigation of driving-while-intoxicated offenses, including the traffic stops relating to such offenses. Based on his training and experience, Officer Alegre noted that some of the common characteristics exhibited by intoxicated drivers include driving at nighttime and swerving within or outside their lane of traffic.

Similarly, Officer Daniel Garcia testified that he too is employed with the El Paso Police Department and has been so for four years, and that he has received training in the investigation of driving-while-intoxicated offenses. Like Officer Alegre, Officer Garcia, based on his training and experience, found swerving within or outside a driver's lane of traffic, driving without lights, making erratic turns, driving too slow or too fast, and driving late at night to be common characteristics of those committing the driving-while-intoxicated offense.

Both officers related that on November 5, 2007, at approximately 3 a.m., they were traveling west on Interstate 10 when they observed Alderete driving a Jeep Cherokee in front of them, in the same lane. As they followed Alderete, Officer Alegre observed her swerving inside the lane. Traffic was light, but the officers could not recall whether Alderete came close to contacting or endangering another car. The officers could not recall how many times they saw the vehicle swerve, but after following Alderete for half of a mile, Officer Alegre noted she was unable to drive in a straight manner and stay within the lane. Consequently, the officers initiated a traffic stop, not because she violated the traffic code, but because she was swerving within her lane at a late hour, which based on their experience, indicated that she was intoxicated.

Based on the testimony presented, Alderete asserted that there was no evidence of intoxication and that swerving within a lane is not a traffic violation; thus, she asked the trial court to grant her motion to suppress on grounds that the officers lacked authority to initiate a stop. The State disagreed, arguing that although a traffic code violation may not have been committed, the officers had reasonable suspicion to stop Alderete for driving while intoxicated. The trial court agreed with Alderte. In its findings of fact and conclusions of law, the trial court found that the

2

officers' testimonies were credible, but concluded that Alderete's swerving within the lane was not a traffic code violation and therefore, that the officers lacked authority to initiate a stop.

## DISCUSSION

On appeal, the State asserts in a single issue that the trial court erred by granting Alderete's motion to suppress. According to the State, the officers did not need to find a violation of the traffic code before stopping Alderete as they had reasonable suspicion to initiate a stop for driving while intoxicated when, in light of their training and experience, Alderete swerved within her lane, at a late hour, for half of a mile, which indicated that she was intoxicated. Alderete responds that no traffic violation occurred and her swerving within the lane, at a late hour, was insufficient to provide reasonable suspicion that she was driving while intoxicated.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *St. George v. State,* 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We do not engage in our own factual review as the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. *Amador v. State,* 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Rather, we give almost total deference to a trial court's determination of historical facts, particularly when the trial court's findings are based on an evaluation of credibility and demeanor. *St. George,* 237 S.W.3d at 725; *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same deference to mixed questions of law and fact if resolving those questions turns on an evaluation of credibility and demeanor. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman,* 955 S.W.2d at 89. However, we review *de novo* the application of legal principles to a specific set of facts, including the trial court's determination of reasonable suspicion and

3

probable cause. *State v. Garcia-Cantu,* 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Guzman,* 955 S.W.2d at 87. Indeed, when the trial court files findings of fact and conclusions of law virtually accepting the credibility of the officers and the State's version of events, the only question before us is whether the trial court properly applied the law to the facts it found. *See State v. Ballman,* 157 S.W.3d 65, 69 (Tex. App.–Fort Worth 2004, pet. ref'd).

*Applicable Law*

A law-enforcement officer is justified in detaining a person for investigative purposes if the officer has a reasonable suspicion to believe the individual is violating the law. *Ford v. State,* 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Woods v. State,* 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (citing *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Castro v. State,* 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). The reasonable suspicion determination disregards the subjective intent of the officer making the stop and looks solely to whether there was an objective basis for the stop. *Ford,* 158 S.W.3d at 492.

In *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007), the Court of Criminal Appeals reaffirmed its previous holding that the "as consistent with innocent activity as with criminal activity" construct is not a viable test for determining reasonable suspicion. The Court noted that "there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion." *Id*. at 380. According to the Court, the question, in determining reasonable

suspicion to stop, is based on the totality of the circumstances, including the consideration of the officers' training and experience. *Curtis*, 238 S.W.3d at 379-80. Indeed, when innocent facts, meaningless to the untrained, are used by trained law-enforcement officers, those facts, combined with permissible deductions therefrom, may form a legitimate basis for suspicion of criminal activity. *See Woods*, 956 S.W.2d at 38-39.

*Application*

Here, the trial court concluded that the officers lacked reasonable suspicion to stop Alderete because her swerving did not violate the traffic code. However, there is no requirement that a traffic regulation must be violated in order for an officer to have sufficient reasonable suspicion to justify a stop of a vehicle. *James v. State*, 102 S.W.3d 162, 172 (Tex. App.–Fort Worth 2003, pet. ref'd); *Cook v. State,* 63 S.W.3d 924, 929 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd). Rather, an officer may be justified in stopping a vehicle based upon a reasonable suspicion of driving while intoxicated, which is a penal offense. *Curtis*, 238 S.W.3d at 379; *James*, 102 S.W.3d at 172; *Cook*, 63 S.W.3d at 929; *Gajewski v. State,* 944 S.W.2d 450, 453 (Tex. App.–Houston [14th Dist.] 1997, no pet.); TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). In this case, Officer Garcia testified that Alderete was stopped not because of a violation of the traffic code, but based on suspicion of intoxication, an argument articulated by the prosecutor and implicitly rejected by the trial court.[1]

---

[1] We pause to note that the dissent suggests that the officer must specifically testify that the reason for the stop must be the same as that argued to the court by the prosecutor. Acceptance of that position is contrary to settled law. *See, e.g., Williams v. State*, 726 S.W.2d 99, 100-01 (Tex. Crim. App. 1986) (concluding defendant's parking on two-way roadway with left wheels next to curb and right wheels more than eighteen inches from curb in violation of section 545.303(a)'s predecessor justified stop, despite officer's testimony that he stopped defendant because of suspected drug transaction); *Singleton v. State*, 91 S.W.3d 342, 347-48 (Tex. App.–Texarkana 2002, no pet.) (not limiting review of reasonableness of stop to violations officer cited; though officer testified stop was due to prohibition against "exhibition of acceleration," stop was justified on basis of unsafe driving); *State v. Salazar*, No. 05-08-01511-CR, 2009 WL 2246133, at *2 (Tex. App.–Dallas July 29, 2009, no pet.) (mem. op., not designated for publication) (parking violation did not need to be mentioned in officer's report nor did it need to be officer's primary basis for approaching defendant to supply the justification for the stop); *Boyle v. State*, No. 01-01-00405-CR, 2002

5

In *Curtis*, the Court of Criminal Appeals found sufficient evidence from which the trial court could have found reasonable suspicion for the stop. *Curtis*, 238 S.W.3d at 381. There, the first officer testified that he had received specialized training in detecting individuals driving while intoxicated, it was part of his training that a driver's weaving in and out of a lane was a possible indication that the driver was intoxicated, and appellant weaved at least three times out of his lane over a relatively short distance of a few hundred yards at one o'clock in the morning. *Curtis*, 238 S.W.3d at 380. The second officer testified that he had been a state trooper for over 23 years, he was "certified in different ways" to detect intoxicated drivers, he, like the arresting officer, was also trained to consider weaving as a possible sign of intoxicated driving, and appellant's vehicle had been "doing a considerable amount of weaving" in and out of his lane that night. *Id*. According to the Court, the trial court could have reasonably concluded, based on the totality of the circumstances, that the officers had reasonable suspicion to stop appellant for driving while intoxicated. *Id*. In so doing, the Court noted that the intermediate court erred by solely analyzing whether weaving, by itself, gave rise to a suspicion of intoxication without considering the other evidence presented. *Id*. at 379-81.

The facts here are somewhat similar. The record reflects that the stop occurred at 3 a.m., and Officer Garcia testified that most driving-while-intoxicated offenses occur between 9 p.m. and 7 a.m. Alderete was unable to drive in a straight manner as she swerved within her lane for half of a mile

---

WL 1340322, at *1, 3 (Tex. App.–Houston [1st Dist.] June 20, 2002, no pet.) (op., not designated for publication) (reasonable suspicion for stop based on traveling in the left lane without passing another vehicle existed despite officer's failure to articulate that reason as the basis of the stop). Even the United State Supreme Court recently noted that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 594, 160 L.Ed.2d 537 (2004) (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)).

on the interstate, a much longer period of time than the few hundred yards observed in *Curtis*.[2]  Both officers testified that they were trained to detect individuals driving while intoxicated and that weaving is a common characteristic of intoxicated drivers.  Finally, both officers stated that they received training in investigating driving-while-intoxicated offenses and had in fact investigated many such offenses. When viewing the totality of the circumstances and considering the officers' collective training and experience in investigating driving-while-intoxicated offenses, we find the officers could have formed reasonable suspicion to stop Alderete on suspicion of driving while intoxicated when she continuously swerved within her lane for half of a mile in the early morning hours.[3]  *See Curtis*, 238 S.W.3d at 380-81.  Accordingly, we hold that the trial court's focus on the sole issue of weaving within the lane not giving rise to a reasonable suspicion that a traffic-code violation was committed, was error in that the court failed to consider whether the officers had reasonable suspicion, based on the totality of the circumstances, that Alderete was driving while

---

[2]  The dissent states that the officers only observed Alderete's vehicle for approximately thirty seconds; however, neither officer testified to how long they observed the vehicle.

[3]  We note that Alderete cites to two intermediate appellate court cases in her brief in asking us to uphold the trial court's decision.  However, those cases predate the Court of Criminal Appeals' decision in *Curtis*. Moreover, Alderete's reliance on *State v. Dixon*, 206 S.W.3d 587, 588, 590-91 (Tex. Crim. App. 2006), is also misplaced as the officers in that case did not stop the vehicle on suspicion of driving while intoxicated but rather based on a traffic-code violation, which was invalidated by the trial court, who did not believe the officers' testimony and found that the turns made by the defendant were not unlawful.

7

intoxicated.[4]  We therefore find that the trial court abused its discretion by granting Alderete's motion to suppress.

## CONCLUSION

We sustain the State's sole issue, reverse the order of the trial court, and remand the case to the trial court for further proceedings.


GUADALUPE RIVERA, Justice

April 21, 2010

Before McClure, J., Rivera, J., and Guaderrama, Judge
Guaderrama, Judge, dissenting, sitting by assignment

(Publish)

---

[4]  The dissent argues that swerving within the lane is not a traffic offense, that an officer's graveyard shift is insufficient to conclude that most driving-while-intoxicated offenses occur at night, that the officer's training in detecting drunk drivers was deficient as no evidence was presented as to the hours of training provided, the training involved, or how the training assisted in differentiating between drunk and sober drivers, and that although weaving is a characteristic of drunk driving, there was no other testimony that Alderete failed to maintain a steady speed, that she inappropriately applied her brakes, or that she drove erratically.  Although the dissent states that he applied the totality-of-the-circumstances test, he has actually engaged in a divide-and-conquer approach arguing assumptions that were not presented to the trial court, which the United States Supreme Court and the Court of Criminal Appeals have condemned.  *See United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Garcia-Cantu*, 253 S.W.3d at 244; *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).  We therefore hold fast to our totality-of-circumstances analysis set out above.

Moreover, we note that the trial court found the officers' testimonies credible.  This the trial court was entitled to do, and we, as a reviewing court, cannot deviate from that finding but rather simply review whether the trial court properly applied the law to the facts.  *Ballman*, 157 S.W.3d at 69.  Therefore, the dissent cannot now suggest that the officers' testimonies were lacking in their training and experience in detecting intoxicated drivers or what characteristics are associated with drunk driving.

**DISSENTING OPINION**

I cannot agree that the arresting officers stopped Alderete for suspicion of driving while intoxicated nor can I agree that the facts articulated by the arresting officers rise to the level of a reasonable suspicion that Alderete was committing any offense including driving while intoxicated. It is undisputed that the standard by which the judiciary should review a stop decision by the police is the "totality of circumstances" test. However, that standard does not allow the reviewing court to indulge the State with a "reasonable inference from specialized training or experience" that was never made by the arresting officers. In addition, the "totality of the circumstances" test does not limit the trial court to a review of only the totality of the incriminating circumstances but rather is a review of a totality of all the circumstances, the "whole picture."

The record does not support a finding that either police officer stopped Alderete for suspicion of driving while intoxicated. On numerous occasions, the officers do indicate that they stopped Alderete <u>solely</u> for swerving within her lane. On one occasion, an officer states he stopped Alderete for swerving in her lane and nothing else. On another occasion, an officer testified he stopped Alderete for her safety. Never does either officer testify he stopped Alderete for suspicion of driving while intoxicated. In fact, when given the opportunity to do so, Officer Alegre did not take it. He answered the prosecutor's question as to <u>why</u> Alderete was stopped for swerving with the conclusion that Alderete was unable to drive in a straight manner.

If the officers were able to articulate the basis for the stop being "swerving within the lane" or "for her safety," certainly they could have articulated "for suspicion of driving while intoxicated." They never testified that they stopped Alderete because they suspected she was driving while intoxicated or that she was swerving and therefore suspected she was intoxicated. Neither did either

9

officer indicate that the swerving within the lane at night had any special "police significance" due to their training or experience from which they reasonably inferred that Alderete was driving while intoxicated.

Direct of Officer Alegre

Q. And when you saw the vehicle swerving, **why** did you pull it over?

A. We pulled it over due to the vehicle unable to drive in a straight manner and stay within the lane.

(Emphasis added).

Officer Alegre's Cross

Q. Now, Officer Alegre, you'll agree with me that the only reason you stopped Ms. Alderete was because she was swerving within the lane; is that correct?

A. That was the observation we had for the initial traffic stop, sir.

.   .   .

Q. But the only reason you stopped her was for swerving within the lane, correct?

A. Yes, sir.

Officer Garcia's Cross

Q. Now, Officer Alegre testified that the only reason you stopped Ms. Alderete was because of swerving within the lane?

A. Yes, sir.

Q. Did you agree with him?

A. Yes, sir.

Q. **There was no other reason, correct?**

A. Not to my knowledge.

10

.   .   .

Q. And would you be able to tell this Court what traffic violation she - -

A. It wasn't a traffic violation. It was just the mere fact that due to intoxicated individuals driving on the freeway at an early hour, we observed her swerving, and for her safety, pulled her over just to - -

Q. But didn't you just state under oath that the only reason you stopped her was because of a traffic violation?

A. I never said traffic violation.

Q. You didn't? I asked you if Officer Alegre stated that that was the only reason he stopped her and you agreed with me.

A. But you never mentioned traffic violation. We stopped her for the swerving.

Q. So you stopped her just for the swerving?

A. Yes, sir.

(Emphasis added).

Based upon this testimony, the trial court correctly granted Alderete's Motion to Suppress. The only basis for the stop the officers <u>articulated</u> was swerving within the lane. Neither officer ever articulated that he made any "reasonable inference" from what he observed that caused him to believe Alderete was driving while intoxicated. Even in the report they subsequently filed, neither officer indicated the stop was made for suspicion of driving while intoxicated. The facts, inferences and reasons articulated by the officers did not amount to a "reasonable suspicion" that Alderete was committing any crime. The officers never raised a suspicion of driving while intoxicated as justification for the stop. That justification was raised by the State's prosecutor to justify the impermissible stop. Similarly, in *United States v. Brignoni-Ponce*, the Government attempted to raise a justification for the stop not raised by the officers making the stop. *United States v. Brignoni-*

11

*Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). In that case, the United States Supreme Court declined to give effect to this type of "after the fact" justification:

> The Government also argues that the location of this stop should be considered in deciding whether the officers had adequate reason to stop respondent's car. This appears, however, to be an after-the-fact justification. At trial the officers gave no reason for the stop except the apparent Mexican ancestry of the car's occupants. It is not even clear that the Government presented the broader justification to the Court of Appeals. We therefore decline at this stage of the case to give any weight to the location of the stop.

*Id*. at 886-87 n.11, 95 S.Ct. at 2583 n.11.

If, however, I were to indulge the State with an "after the fact justification" that what the officers really did was, based on their experience and training, stop Alderete for suspicion of driving while intoxicated which was manifested by Alderete swerving within the lane, I would continue to find that the evidence is lacking. In this case, the police testified as to mere conclusions without supporting facts. In *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005), the court considered the case of a defendant who filed a motion to suppress evidence after being stopped for driving and "following too close." The trial court denied the motion and the court of appeals affirmed stating, "Trooper Peavy's experience and training qualified him to make a judgment on whether, 'considering the speed of the vehicles, traffic and the conditions of the highway,' [Ford] was following the car in front of him too closely." *Id*. at 492. The Court of Criminal Appeals reversed finding that Trooper Peavy's testimony was a mere conclusion devoid of fact because the trooper only stated that the defendant was "following too close." *Id.* at 493. The Court of Criminal Appeals found an absence of evidence in the record to reveal any facts allowing an appellate court to determine the circumstances upon which the trooper could reasonably conclude that the defendant actually was, had been, or soon would have been engaged in criminal activity. *Id.*

12

Though the officers testified that Alderete was swerving, there is no factual description supporting that conclusion from which the trial court could gauge the police decision to make the stop. There is no indication of how many times the car "swerved" within the lane. There is no factual description of how the "swerve" was executed or what it looked like so that a reviewing court could make its own judgment as to whether or not that evidence rose to a reasonable suspicion. In *Terry v. Ohio*, the Supreme Court stated that "demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." *Terry v. Ohio*, 392 U.S. 1, 22 n.18, 88 S.Ct. 1868, 1880 n.18, 20 L.Ed 2d 889 (1968).

In addition, the trial court was an experienced prosecutor and is an experienced judge. Undoubtedly, she has much experience in reviewing and hearing driving while intoxicated cases and would know reasonable suspicion when she hears it. The totality of the circumstances that she could have considered would include the fact that the police did not articulate that Alderete was exhibiting some of the other common characteristics of intoxicated drivers.[1]

### Direct of Officer Alegre

Q. In your training and experience as a police officer investigating DWI offenses, do you see common driving characteristics before the vehicle is pulled over?

---

[1] In *United States v. Cortez*, the Supreme Court stated: "Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances - the whole picture - must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions - inferences and deductions that might well elude an untrained person." *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (citations omitted).

13

A: Yes, sir.

Q: And what are some of those?

A: Driving slowly, swerving within or without the lane.

### Direct of Officer Garcia

Q: In your training and experience as a police officer, have you seen any common driving characteristics of vehicles?

A: Yes, we have.

Q: What are some of those characteristics[?]

A: Swerving, driving without lights off -- I mean, driving with lights off, making erratic turns, driving too slow, driving too fast.

The trial court was able to draw no reasonable inference of criminal activity from the totality of those facts or conclusions and neither can I. Therefore, from the testimony, some of the totality of the circumstances that the trial court could have considered included that Alderete was not driving with her lights off, was not making erratic turns, was not driving too slow, was not driving too fast, and was not swerving without the lane. The totality of the circumstances the trial court may have considered from common experience could also include that there was no testimony that Alderete changed lanes without signaling, no testimony that she failed to maintain a steady speed while driving, no testimony that she was inappropriately applying her brakes or no testimony that Alderete was in any other manner erratic in her driving. The trial court and this Court in considering the "totality of the circumstances" could balance the fact that the driver was swerving within her lane against the absence of the many other characteristics of intoxicated drivers that were not observed by the arresting officers. In considering the totality of these circumstances, I would find no reasonable suspicion to believe Alderete was driving while intoxicated.

14

In conducting a *de novo* review of what the officers considered, I would review the conclusions the officers made to determine if they add up to a reasonable suspicion for the stop. *See U.S. v. Rangel-Portillo*, 586 F.3d 376 (5th Cir. 2009) (weighing individual factors to determine what each added to the reasonable suspicion analysis).

Conclusion No. 1  Alderete was unable to drive in a straight manner as she swerved within her lane.  This would only be relevant and incriminating if the officer could somehow know that Alderete was attempting to drive in a straight line and was incapable of doing so.  However, here, the officers' conclusions that the driver was "unable to drive in a straight manner" as she weaved in her lane assumes that the driver was attempting to drive in a straight manner and was unable to so do.  Nothing in the law required Alderete to drive in a straight manner within the lane because the legislature has established that driving anywhere within the marked lane is straight enough.  Section 545.060 of the Texas Transportation Code addresses driving on a roadway laned for traffic:

> (a)  An operator on a roadway divided into two or more clearly marked lanes for traffic:
>
> > (1)  shall drive as nearly as practical entirely within a single lane; . . . .

TEX. TRANSP. CODE ANN. § 545.060 (Vernon 1999).

The first conclusion adds nothing significant to the reasonable suspicion analysis.

Conclusion No. 2  Most driving while intoxicated offenses occur at night between the hours of 9-3.  The officer testified that he observed most driving while intoxicated offenses at night.  He also testified that he usually worked the graveyard shift.  It would not be unusual to see most crimes during the time of his shift, since that is the time he is most on patrol.  This conclusion adds little to the reasonable suspicion analysis.

15

Conclusion No. 3   Officers are trained to detect individuals who are driving while intoxicated.  The training the officers articulated was training on Standardize Field Sobriety Tests or SFST.

## Direct of Officer Alegre

Q:  In the course of your employment as a police officer, have you received training in the investigation of driving while intoxicated offenses?

A:  Yes, sir.

Q:  What type of training?

A:  I've had SFST training at the police academy.

Q:  Anything else?

A:  We had similar training as to traffic stops relating to and making contact with such a situation.

## Direct of Officer Garcia

Q:  In your training as a police officer, have you received training in the investigation of driving while intoxicated offenses?

A:  Yes, I have.

Q:  Could you describe that training?

A:  It was about a week long at the academy, and not only that, just on-the-job experience.

Q:  When you were training at the academy, what training did you receive?

A:  It was standardized field sobriety tests training.

Standardized Field Sobriety Test (SFST) is something with which an experienced prosecutor and judge would be very familiar.  This trial judge would know that Standardized Field Sobriety Test (SFST) are administered to a vehicle operator after they have been stopped.  This training would

16

contribute nothing to the court's determination of reasonable suspicion to make the stop of someone for suspicion of driving while intoxicated. The only relevant evidence of "training" left for the court to consider would be that one officer had a year and a half of unspecified experience and that the other officer had four years of unspecified "on the job" training. The conclusion that the officers were trained in detecting individuals driving while intoxicated provided no facts for the trial judge to determine how that would add to the reasonable suspicion. From this conclusion, the trial court could glean nothing about the hours of training provided, the training involved, or how the training assisted in differentiating between an intoxicated driver swerve and a sober driver swerve. Reliance on special training is insufficient to establish reasonable suspicion absent objective factual support. *Ford*, 158 S.W.3d at 494; *Torres v. State*, 182 S.W.3d 899, 903 (Tex. Crim. App. 2005). In *Ford*, the Court of Criminal Appeals stated:

> When a trial court is not presented with such facts, the detention cannot be "subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." . . . . Allowing a police officer's opinion to suffice in specific facts' stead eviscerates *Terry*'s reasonable suspicion protection. . . . . Therefore, we adhere to the principle that specific, articulable facts are required to provide a basis for finding reasonable suspicion. Mere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis.

*Ford*, 158 S.W.3d at 493.

The third conclusion adds little to the reasonable suspicion analysis.

Conclusion No. 4. Weaving is a common characteristic of intoxicated drivers. This may be true. But so are the other characteristics articulated by the officers that were not here observed. In addition, weaving is also a common characteristic of sober drivers. This comparison has often been attacked by the mantra that the "as consisted with innocent activity as with criminal activity" has

17

been abandoned for the "totality of the circumstances test." However, often those making this argument fail to apply the "totality of the circumstances test" and, instead, substitute the equally improper test that could be called the "as consistent with guilty activity as with innocent activity test." These two improper tests are the opposing slippery slopes surrounding the constitutionally permissible ridge we call the "totality of the circumstances" test. This "totality of circumstances test" includes a consideration that the observed activity could be innocent and could be criminal. A stop is not justified unless and until it is <u>reasonable to suspect</u> that the activity is in fact criminal. In *Terry v. Ohio*, the arresting officer first noticed that the individuals (he later stopped) were engaged in activity that could be innocent. So as not to stop individuals who were engaged in innocent activity, he surveilled the subjects for a lengthy period of time until the totality of what he saw, which included much detail, separated the activity from innocent activity and made it clearly suspicious activity. Although swerving within the lane may be a relevant factor it isn't sufficient to justify the stop and adds only slightly to the reasonable suspicion inquiry.[2]

In the case at bar, the officers observed Alderete's vehicle for approximately 30 seconds and there was a complete lack of factual support for the officers' reliance on their "specialized training" that allowed them to differentiate between a sober driver swerve and an intoxicated driver swerve. Based upon these sparse facts, even at night, a reasonable person, could not form a reasonable suspicion that Alderete was driving while intoxicated. This stop, in order to be constitutional, had to be based upon the "police significance" drawn from the officers' experience or training about this

---

[2] In considering the issue of one relevant factor out of many in the context of a transporting undocumented aliens case, the United States Supreme Court ruled that: "The likelihood that any given person of Mexican ancestry is an alien is high enough to make Mexican appearance a relevant factor, but standing alone it does not justify stopping all Mexican-Americans to ask if they are aliens." *Brignoni-Ponce*, 422 U.S. at 886-87, 95 S.Ct. at 2583.

particular style of swerving. However, there was no testimony explaining how this style of swerving within the lane at night was significant as a result of their experience or training. There was no testimony that the officers made any inference from the facts that could lead them to reasonably suspect Alderete of driving while intoxicated.

The burden is on the police to articulate the facts giving rise to the reasonable suspicion for a stop. Because the police failed to adequately articulate the facts or reasonable inferences from those facts, made pursuant to their experience or training, giving rise to a *reasonable suspicion that a crime had been, was being, or would be committed*, I would affirm the trial court's decision and respectfully dissent from the majority opinion in this case.

DAVID GUADERRAMA, Judge, sitting by assignment

April 21, 2010