COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-13-00079-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 7 |
| SALVADOR VASQUEZ, JR., | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120C07670) |
| | § | |

## **O P I N I O N**

Salvador Vasquez, Jr., was pulled over for suspicion of driving while intoxicated (DWI) and subsequently arrested for that offense. The stop and arrest were documented in a video recording. Vasquez filed a pretrial motion to suppress on the basis, among others, that the officer detained him "without any reasonable suspicion that he was engaged in criminal activity." At the suppression hearing, the trial court saw the video recording and heard the officer's testimony. The trial court concluded the stop was illegal and granted Vasquez's motion. Relying primarily on this Court's opinion in *State v. Alderete*, 314 S.W.3d 469 (Tex.App.--El Paso 2010, pet ref'd), the State contends the stop was justified and, therefore, the trial court erred ruling to the contrary. We affirm.

### **FACTUAL AND PROCEDURAL BACKGROUND**

Vasquez was riding his motorcycle on Interstate 10 at approximately midnight when El Paso Police Officer Raul Lom stopped him. While speaking to Vasquez, Lom smelled the odor of alcohol on Vasquez's breath and accused him of drinking. Vasquez initially denied the accusation but, after further prodding, admitted to consuming "[t]hree or four beers." Lom administered the three standard field sobriety tests: the horizontal gaze nystagmus test (HGN); the walk-and-turn test; and the one-leg-stand test.[1] Lom determined Vasquez exhibited six of six clues of intoxication on the HGN test, five of eight clues on the walk-and-turn test, and one of four clues on the one-leg stand test. Based on his observations and Vasquez's performance on the field sobriety tests, Lom arrested Vasquez for DWI. The State charged Vasquez with misdemeanor DWI, and he moved to suppress all evidence concerning his arrest. *See* TEX.PENAL CODE ANN. § 49.04 (West Supp. 2013). At the suppression hearing, Lom testified he observed Vasquez, who was directly ahead of him, "swinging his left arm back and forth at the same time he was riding the motorcycle" and noticed "the motorcycle . . . weaving left and right . . . within the lane." According to Lom, most DWIs occur between 11:00 p.m. and 3:00 a.m. and one of the most common things "intoxicated drivers, unlike sober drivers, [do] [is] . . . weave within a lane like that[.]" Lom stated he followed Vasquez for approximately three miles before pulling him over for suspicion of DWI based on his "experience," "the time of evening[,]" "the actions being taken[,]" and "the weaving."[2]

On cross-examination, Lom agreed weaving within a lane is not a traffic offense. He also

---

[1] Lom ordered Vasquez to perform the field sobriety tests and chose not to inform Vasquez of his right to refuse. However, whether Vasquez was coerced into performing the tests is not an issue before us. The sole question before us is the justification for the stop.

[2] Lom, a thirty-five-year veteran of the police department, was a member of its DWI Task Force. According to Lom, he had been on the task force for the past ten years and, during that period, had conduced 2,000 DWI investigations.

admitted Vasquez did not drive onto "the safety shoulder of the interstate" as alleged in his written report of the incident. Lom's admission is borne out by the recording, which shows the motorcycle weaving within the lane and occasionally touching its boundaries but never crossing them.[3] The recording also appears to show both of Vasquez's hands on the handlebars at all times, contrary to Lom's testimony.

Following the hearing, the trial court signed an order granting the motion to suppress and issued findings of fact and conclusions of law. The relevant findings and conclusions include:

**FINDINGS OF FACT**

.          .          .

2. Officer Lom testified that the Defendant was driving with one hand extended straight out to his side. (Tr. P. 7, 10)

3. The video shows that the Defendant drove with both hands on the handle bars.

4. Officer Lom wrote in his report and testified that the Defendant was going in and out of his lane and drove onto the shoulder. (Tr. p. 42, 43, 45)

5. The video shows that the Defendant at all times drove within a center lane that was not even adjacent to a shoulder.

6. Both Officer Lom's testimony and the video show that the Defendant, while staying in a lane, did go from side to side within the lane. This was done in a smooth rhythmic pattern.

7. Officer Lom wrote in his report that the Defendant was following another vehicle too closely. He did not give any facts to support this conclusory allegation and the video does not show such a violation.

.          .          .

**CONCLUSIONS OF LAW**

.          .          .

---

[3] Immediately before Lom activated his overhead lights, Vasquez moved over into the next lane but signaled before doing so.

2. There may be situations when weaving within a lane, combined with the time of night and other factors, may support a finding of reasonable suspicion to justify a stop.

3. Because of the following credibility concerns in the state's presentation, this is not such a case. The video does not confirm, and may actually refute, the claims that the Defendant drove one handed, left his lane, drove on the shoulder, [and] followed too closely . . . .

## MOTION TO SUPPRESS

In its sole issue, the State contends the trial court erred in granting the motion to suppress based on the conclusion that the traffic stop was illegal. According to the State, Officer Lom was justified in stopping Vasquez for suspicion of DWI because of his training, experience, and observations, namely of Vasquez weaving within the lane at that late hour. We disagree.

### *Applicable Law*

A police officer is justified in detaining a motorist when, based on the totality of the circumstances, the officer has specific articulable facts, together with rational inferences from those facts, that lead him to conclude that the motorist is, has been, or soon will be engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997).

### *Standard of Review*

We review a trial court's decision to grant or deny a motion to suppress for an abuse of discretion. *Montanez v. State*, 195 S.W.3d 101, 108 (Tex.Crim.App. 2006). A trial court abuses its discretion when its decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App. 1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g).

4

### 1. The Correct Standard: Almost Total Deference

In conducting our review, we give a trial court's determination of historical facts almost total deference, especially when they are based on an evaluation of credibility and demeanor and supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). "That same deferential standard of review 'applies to a trial court's determination of historical facts [even] when that determination is based on a videotape recording admitted into evidence at a suppression hearing.'" *State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013). "Although appellate courts may review *de novo* 'indisputable visual evidence' contained in a videotape, the appellate court must defer to the trial judge's factual findings on whether a witness actually saw what was depicted on a videotape or heard what was said . . . ." *Id*. at 570-71 [Internal citations omitted]. In other words, "the trial court's factual determinations are entitled to almost total deference so long as they are supported by the record, meaning that the video does not indisputably negate the trial court's findings." *State v. Gendron*, No. 08-13-00119-CR, 2015 WL 632215, *3 (Tex.App.--El Paso Feb. 11, 2015, no pet. h.).

We also afford the same amount of deference to a trial courts' rulings on the application of the law to the facts—so called mixed questions of law and fact—if resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We may review *de novo* "mixed questions of law and fact" not falling within this category. *Id*.

### 2. The State's Position: *De Novo* Review

The State argues we should review the trial court's ruling *de novo*, rather than under the deferential standard, because the only issue before us is whether the trial court correctly applied the law to a "concrete" set of facts not subject to credibility determinations. According to the

State, the "concrete" set of facts is Vasquez's "swerving within the lane, on the freeway, at night." The State asserts these facts are "concrete" and, thus, not subject to credibility determinations because they are conclusively established by indisputable visual evidence—the recording. For the reasons articulated below, we are not persuaded by the State's argument.

## *Discussion*

Applying the almost total deference standard of appellate review, we conclude the trial court did not abuse its discretion in granting Vasquez's motion to suppress.

The critical fact in this case is the relevant significance of Vasquez's driving pattern, the explanation of which rests on the testimony of a witness the trial court found was not credible. Officer Lom testified that, based on his experience, Vasquez's driving pattern—driving one-handed, weaving within his lane, and riding onto the shoulder late at night—indicated Vasquez was intoxicated. But the trial court found Officer Lom lacked credibility because the video recording contradicted some of the events he claimed justified stopping Vasquez, and the recording does not indisputably negate the trial court's findings. Thus, the trial court reasonably could have disbelieved, and was entitled to disbelieve, the portion of Officer's Lom's testimony that, *based on his experience*, he had a reasonable suspicion Vasquez was intoxicated. Because we are not in a better position than the trial court to assess factual issues turning on credibility, and because the record supports rather than indisputably negates the trial court's factual findings, we defer to the trial court's resolution of this issue.

The State contends the trial court's credibility determinations are irrelevant in determining whether Officer Lom was justified in stopping Vasquez for suspicion of DWI because the facts critical in making that determination were conclusively established by the recording. According

6

to the State, "once [Vasquez] swerved within the lane, late at night, and was seen doing so by an officer very experienced in detecting DWI's, as conclusively shown in the video recording, and as expressly found by the trial court, [Officer] Lom was legally justified in stopping him for his operation of the motorcycle." In support of the proposition that an experienced DWI officer may legally stop a driver for suspicion of DWI if he witnesses the driver weaving within a lane late at night, the State cites the aforementioned *Alderete v. State*. The State's reliance on *Alderete* is misplaced.

In *Alderete*, we reversed a trial court's finding that a traffic stop was improper. 314 S.W.3d at 471, 474-75. There, two police officers followed the appellee's vehicle for one-half mile in the early morning hours and noticed it weaving within its lane. *Id*. at 471. At the suppression hearing, both officers testified that, based on their training and experience, weaving within a lane late at night is a common characteristic exhibited by an intoxicated driver. *Id*. "Consequently, the officers initiated a traffic stop, not because she violated the traffic code, but because she was swerving within her lane at a late hour, which based on their experience, indicated that she was intoxicated." *Id*. Although the trial court found the officers were credible, it granted the motion to suppress on the basis that they lacked authority to stop the appellee because weaving within a lane was not a traffic code violation. *Id*. Because the trial court accepted the State's version of events and the only question before us was whether the trial court properly applied the law to the facts it found, we reviewed the trial court's ruling *de novo*. *Id*. at 472. Employing that standard, we concluded the trial court erred because the officers had a reasonable suspicion, based on the totality of the circumstances, including their experience, that the appellee was driving while intoxicated. *Id*. at 474-75.

Our case is distinguishable. In *Alderete*, the historical facts of the events leading to the stop were uncontested and unmixed with credibility disputes. Here, as mentioned above, the converse is true. The explanation for the relative significance of Vasquez's driving pattern rested on Officer Lom's testimony. But his explanation was implicitly rejected by the trial court because it found his testimony unreliable. As we recently stated in *State v. Gendron*, "the State cannot ask us to rely on the officer's years of training and experience in interpreting the facts shown on the video when the trial court found the officer's testimony unreliable." 2015 WL 632215, at *6. Thus, although the recording shows Vasquez's vehicle drifting back and forth within its lane late at night, absent a credible witness's interpretation of the significance of those movements, we are in no position to conclude that Vasquez's movements are indicative of an impaired driver. Because the recording does not indisputably contradict the trial court's findings, its ruling is afforded almost total deference. Under that standard, we cannot say the trial court's ruling is so clearly wrong as to lie outside the zone of reasonable disagreement.

The State's issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

March 18, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

8