PD-0586-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/15/2015 10:26:11 AM
Accepted 5/15/2015 1:41:42 PM
ABEL ACOSTA
CLERK

No. 08-13-00079-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

THE STATE OF TEXAS,                                             Appellant

v.

SALVADOR VASQUEZ, JR.,                                         Appellee

Appeal from El Paso County

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

FILED IN
COURT OF CRIMINAL APPEALS

May 15, 2015

ABEL ACOSTA, CLERK

## NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellee, Salvador Vasquez, Jr.

*The case was tried before the Honorable Thomas A. Spieczny, County Court at Law No. 7 of El Paso County, Texas.

*Counsel for Appellant at trial and on appeal was Santiago Hernandez, 1219 E. Missouri Ave., El Paso, TX 79902.

*Counsel for the State at trial was Patrick Sloane and Jessica Vasquez, Assistant District Attorneys, 201 El Paso County Courthouse, 500 E. San Antonio, El Paso, Texas 79901.

*Counsel for the State on appeal was Joe Monsivais, former Assistant District Attorney, 201 El Paso County Courthouse, 500 E. San Antonio, El Paso, Texas 79901.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

## TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **May a court conclude that erratic driving is indicative of impairment without the benefit of an officer's training and experience?**

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

APPENDIX  (Opinion of the Court of Appeals)

ii

# INDEX OF AUTHORITIES

**Cases**

*State v. Alderete*, 314 S.W.3d 469 (Tex. App.–El Paso 2010, pet. ref'd). . . . . . . . 6

*Texas v. Brown*, 460 U.S. 730 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . 6

*United States v. Cortez,* 449 U.S. 411 (1981). . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Curtis v. State*, 238 S.W.3d 376 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . 5

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011). . . . . . . . . . . . 1, 4

*State v. Elias*, 339 S.W.3d 667 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . 4

*Foster v. State*, 326 S.W.3d 609 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . 4

*State v. Gendron*, 08-13-00119-CR, 2015 Tex. App. LEXIS 1334
      (Tex. App.–El Paso Feb. 11, 2015, pet. filed 3/18/15). . . . . . . . . . . . . . . . 7

*United States v. Harris*, 192 F.3d 580 (6th Cir. Ohio 1999). . . . . . . . . . . . . . . . 5

*K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357 (Tex. 2000). . . . . . . . . . . . . . . . . . . 6

*State v. Le*, PD-0605-14, __S.W.3d__, 2015 Tex. Crim. App. LEXIS 516
      (Tex. Crim. App. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Osbourn v. State*, 92 S.W.3d 531 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . 6

*United States v. Paton*, 535 F.3d 829 (8th Cir. Minn. 2008) . . . . . . . . . . . . . . . 5

*State v. Vasquez*, 08-13-00079-CR, 2015 Tex. App. LEXIS 2543
      (Tex. App.–El Paso Mar. 18, 2015) (not designated for publication). . *passim*

*Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000). . . . . . . . . . . . . . . . . . . . . . . 5

No. 08-13-00079-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

THE STATE OF TEXAS,                                                Appellant

v.

SALVADOR VASQUEZ, JR.,                                          Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

**STATEMENT REGARDING ORAL ARGUMENT**

The State requests oral argument. The facts of this case are straightforward, but the issue of when a judge may draw inferences without the assistance of trained, experienced officers recurs at suppression hearings and when reading affidavits. Conversation will help determine when knowledge has become common enough to be accepted without a lay or expert opinion.

1

## STATEMENT OF THE CASE

Appellee was charged with driving while intoxicated. The trial court suppressed all evidence of intoxication. The court of appeals affirmed, holding that it could not find reasonable suspicion without credible testimony, based on training and experience, that weaving is indicative of impairment.

## STATEMENT OF PROCEDURAL HISTORY

On March 18, 2015, the court of appeals upheld the suppression order in an unpublished opinion.[1] The State's motion for rehearing was denied April 15, 2015. The State's petition is due on May 15, 2015.

## GROUND FOR REVIEW

**May a court conclude that erratic driving is indicative of impairment without the benefit of an officer's training and experience?**

## ARGUMENT AND AUTHORITIES

Reasonable suspicion is present when the facts and rational inferences therefrom suggest a realistic probability that criminal activity is afoot.[2] A trained, experienced officer is sometimes required to explain the significance of certain facts. The court of appeals has repeatedly held that the significance of weaving can only be understood by such an officer. Does the conclusion that weaving suggests

---

[1] *State v. Vasquez*, 08-13-00079-CR, 2015 Tex. App. LEXIS 2543 (Tex. App.–El Paso Mar. 18, 2015) (not designated for publication).

[2] *Derichsweiler v. State*, 348 S.W.3d 906, 915-16 (Tex. Crim. App. 2011).

impairment require an officer's opinion, or is it common sense?

Appellee was arrested for driving his motorcycle while intoxicated shortly after midnight. The officer's dashcam video shows appellee weaving within his lane, veering suddenly multiple times, and riding almost on top of the dashed lane dividing lines with cars nearby.[3] The trial court granted the motion to suppress based on the absence of video evidence supporting some of the officer's reported observations.[4]

The court of appeals affirmed. "The critical fact in this case is the relevant significance of Vasquez's driving pattern, the explanation of which rests on the testimony of a witness the trial court found was not credible."[5] Although the officer testified that his training and experience told him that appellee's driving suggested intoxication,[6] "the trial court found Officer Lom lacked credibility because the video recording contradicted some of the events he claimed justified stopping Vasquez[.]"[7] "Thus, the trial court reasonably could have disbelieved, and was entitled to disbelieve, the portion of Officer's Lom's testimony that, *based on his experience*, he

---

[3] The video was not offered into evidence, but its extensive use in and by the trial court prompted the court of appeals to order it included on June 12, 2013.

[4] *See* Appendix, Findings of Fact and Conclusions of Law, Conclusion 3.

[5] Slip op. at 6.

[6] Slip op. at 2; 1 RR 9-10. Lom had over ten years on the DWI Task Force, during which time he conducted roughly 2000 DWI arrests or investigations. Slip op. at 2 n.2; 1 RR 6.

[7] Slip op. at 6. *See* Findings of Fact 2-5, 7.

had a reasonable suspicion Vasquez was intoxicated."[8]  In response to the argument that appellee's driving is on video, the court held, "absent a credible witness's interpretation of the significance of those movements, we are in no position to conclude that Vasquez's movements are indicative of an impaired driver."[9]

To begin, although the trial court found that the video contradicted some of the officer's testimony, it made no findings regarding his training and experience or his credibility generally.  A court of appeals should not infer a dispositive finding when explicit findings are made.[10] Regardless, an officer's testimony is unnecessary to find reasonable suspicion in erratic driving around midnight.[11]

An officer's training and experience can undoubtedly be vital in a given case. The facts must often be "viewed through the prism of the detaining officer's particular level of knowledge and experience,"[12] because "a trained officer draws inferences and makes deductions . . . that might well elude an untrained person."[13] Case law is full of examples of facts that might suggest nothing to a juror but hold

---

[8]    Slip op. at 6 (emphasis in original).

[9]    Slip op. at 8.

[10]    *State v. Elias*, 339 S.W.3d 667, 676 (Tex. Crim. App. 2011).

[11]    This Court has already held that time of day is a relevant factor in determining reasonable suspicion of DWI.  *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010).

[12]    *Derichsweiler*, 348 S.W.3d at 915.

[13]    *United States v. Cortez*, 449 U.S. 411, 418 (1981).

4

special significance to trained, experienced officers.[14]  In fact, this Court has pointed

to officers' training and experience to support the "rational inference" that the driver

of a car "weaving in and out of his lane several times, over a short distance, late at

night" was intoxicated.[15]

But a witness is not required to testify to the obvious significance of a fact

simply because they regularly do.[16]  "[T]he determination of reasonable suspicion

must be based on commonsense judgments and inferences about human behavior."[17]

Although officers often have unique insight, judges are no less qualified to act as

"practical people formulat[ing] certain commonsense conclusions about human

---

[14]    *See State v. Le*, PD-0605-14, __S.W.3d__, 2015 Tex. Crim. App. LEXIS 516 (Tex. Crim. App. 2015), slip op. at 4 (constantly running air conditioning when the ambient temperature is "fairly cool" is consistent with a hydroponic grow operation because the cooling is required to offset the heat of high-intensity metal halide grow lamps); *Cortez*, 449 U.S. at 419-22 (detailing an investigation based on specialized knowledge that made stop of illegal immigrant trafficker reasonable); *Texas v. Brown*, 460 U.S. 730, 742-43 (1983) (plurality) (officer testified that balloons are frequently used to carry narcotics; "the balloon itself spoke volumes as to its contents -- particularly to the trained eye of the officer."), *id*. at 746 (Powell, J., joined by Blackmun, J., concurring) ("Even if it were not generally known that a balloon is a common container for carrying illegal narcotics, we have recognized that a law enforcement officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person."); *United States v. Harris*, 192 F.3d 580, 583 (6th Cir. Ohio 1999) ("[Officer] Snavely also stated that Harris had one pant leg rolled up, and that this is a common street sign that a person is holding or dealing drugs.").

[15]    *Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007).

[16]    *See*, *e.g.*, *United States v. Paton*, 535 F.3d 829, 836 (8th Cir. Minn. 2008) ("In her averments she indicated that she had learned through her training and experience that 'digital camera[s], computers and the Internet have become a common tool for individuals who get sexual gratification from viewing images of children or interacting with minors.'").

[17]    *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000).

behavior."[18] That erratic driving reasonably suggests the loss of normal use of mental or physical faculties is a commonsense conclusion.

It is helpful to analogize this issue to the admissibility of expert testimony.[19] "[A] trial court need not exclude expert testimony when the general subject matter is within the comprehension of the average juror, as long as the witness has some specialized knowledge on the topic that will 'assist' the jury."[20] But, "When the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony."[21] What does an officer's training and experience tell the trial court about erratic driving that is not common knowledge?

Although this case is unpublished, it is indicative of reasoning that persists in the Eighth Court of Appeals. In *Alderete*, it reversed the trial court and found reasonable suspicion of DWI when the driver "continuously swerved within her lane for half of a mile in the early morning hours."[22] But it has repeatedly distinguished

---

[18]    *Cortez*, 449 U.S. at 418.

[19]    Although the court of appeals repeatedly refers to training and experience, it does not state whether the testimony it requires would be an expert, rather than lay, opinion. *Compare* TEX. R. EVID. 701 (permitting opinions based on perception) with 702 (permitting testimony from witness qualified by, *inter alia*, experience and training); *see Osbourn v. State*, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002) ("although police officers have training and experience, they are not precluded from offering lay testimony regarding events which they have personally observed.").

[20]    *Coble v. State*, 330 S.W.3d 253, 288 (Tex. Crim. App. 2010).

[21]    *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000).

[22]    *State v. Alderete*, 314 S.W.3d 469, 474 (Tex. App.–El Paso 2010, pet. ref'd).

that case based exclusively on the absence of credible testimony about the significance of the same (or worse) facts.[23] The court of appeals's insistence on officer testimony to draw commonsense inferences from undisputed facts is at odds with a central tenet of suppression law, and it should be corrected.[24]

Conclusion

An officer's training and experience are only necessary when a fact does not speak for itself. It does not take an expert to conclude that the failure to drive in a straight line, or multiple sudden movements within a lane, suggests a realistic probability of driving while intoxicated. Contrary to its conclusion, appellate courts are in a position to conclude that erratic driving is indicative of an impaired driver.

---

[23]     *See also State v. Gendron*, 08-13-00119-CR, 2015 Tex. App. LEXIS 1334 at *19 (Tex. App.–El Paso Feb. 11, 2015, pet. filed 3/18/15) ("Here, however, we are faced with the converse situation here (sic) where the critical fact--the relative significance of Appellee's driving pattern--would come from a witness the trial court found to lack credibility. Moreover, that witness never testified to the significance of Appellee's driving as a possible indicator of intoxication."). Compared to the half-mile in *Alderete* and few hundred yards in *Curtis*, 238 S.W.3d at 380, appellee was followed for nearly three miles. 1 RR 12, Finding of Fact 1.

[24]     *See* TEX. R. APP. P. 66.3(c).

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review, and that the decision of the Court of Appeals be reversed.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.Texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

8

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool the applicable portion of this document contains 2,460 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 15th day of May, 2015, the State's Petition for Discretionary Review was served electronically through the electronic filing manager or e-mail on the parties below.

Lily Stroud
Assistant District Attorney
201 El Paso County Courthouse
500 E. San Antonio
El Paso, Texas 79901
Lstroud@epcounty.com

Santiago Hernandez
1219 E. Missouri Ave.
El Paso, Texas 79902
santilawyer@gmail.com

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

9

**APPENDIX**



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-13-00079-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | County Court at Law No. 7 |
| SALVADOR VASQUEZ, JR., | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120C07670) |
| | § | |

**O P I N I O N**

Salvador Vasquez, Jr., was pulled over for suspicion of driving while intoxicated (DWI) and subsequently arrested for that offense. The stop and arrest were documented in a video recording. Vasquez filed a pretrial motion to suppress on the basis, among others, that the officer detained him "without any reasonable suspicion that he was engaged in criminal activity." At the suppression hearing, the trial court saw the video recording and heard the officer's testimony. The trial court concluded the stop was illegal and granted Vasquez's motion. Relying primarily on this Court's opinion in *State v. Alderete*, 314 S.W.3d 469 (Tex.App.--El Paso 2010, pet ref'd), the State contends the stop was justified and, therefore, the trial court erred ruling to the contrary. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Vasquez was riding his motorcycle on Interstate 10 at approximately midnight when El Paso Police Officer Raul Lom stopped him. While speaking to Vasquez, Lom smelled the odor of alcohol on Vasquez's breath and accused him of drinking. Vasquez initially denied the accusation but, after further prodding, admitted to consuming "[t]hree or four beers." Lom administered the three standard field sobriety tests: the horizontal gaze nystagmus test (HGN); the walk-and-turn test; and the one-leg-stand test.[1] Lom determined Vasquez exhibited six of six clues of intoxication on the HGN test, five of eight clues on the walk-and-turn test, and one of four clues on the one-leg stand test. Based on his observations and Vasquez's performance on the field sobriety tests, Lom arrested Vasquez for DWI. The State charged Vasquez with misdemeanor DWI, and he moved to suppress all evidence concerning his arrest. *See* TEX.PENAL CODE ANN. § 49.04 (West Supp. 2013). At the suppression hearing, Lom testified he observed Vasquez, who was directly ahead of him, "swinging his left arm back and forth at the same time he was riding the motorcycle" and noticed "the motorcycle . . . weaving left and right . . . within the lane." According to Lom, most DWIs occur between 11:00 p.m. and 3:00 a.m. and one of the most common things "intoxicated drivers, unlike sober drivers, [do] [is] . . . weave within a lane like that[.]" Lom stated he followed Vasquez for approximately three miles before pulling him over for suspicion of DWI based on his "experience," "the time of evening[,]" "the actions being taken[,]" and "the weaving."[2]

On cross-examination, Lom agreed weaving within a lane is not a traffic offense. He also

---

[1] Lom ordered Vasquez to perform the field sobriety tests and chose not to inform Vasquez of his right to refuse. However, whether Vasquez was coerced into performing the tests is not an issue before us. The sole question before us is the justification for the stop.

[2] Lom, a thirty-five-year veteran of the police department, was a member of its DWI Task Force. According to Lom, he had been on the task force for the past ten years and, during that period, had conduced 2,000 DWI investigations.

2

admitted Vasquez did not drive onto "the safety shoulder of the interstate" as alleged in his written report of the incident. Lom's admission is borne out by the recording, which shows the motorcycle weaving within the lane and occasionally touching its boundaries but never crossing them.[3] The recording also appears to show both of Vasquez's hands on the handlebars at all times, contrary to Lom's testimony.

Following the hearing, the trial court signed an order granting the motion to suppress and issued findings of fact and conclusions of law. The relevant findings and conclusions include:

**FINDINGS OF FACT**

.      .      .

2. Officer Lom testified that the Defendant was driving with one hand extended straight out to his side. (Tr. P. 7, 10)

3. The video shows that the Defendant drove with both hands on the handle bars.

4. Officer Lom wrote in his report and testified that the Defendant was going in and out of his lane and drove onto the shoulder. (Tr. p. 42, 43, 45)

5. The video shows that the Defendant at all times drove within a center lane that was not even adjacent to a shoulder.

6. Both Officer Lom's testimony and the video show that the Defendant, while staying in a lane, did go from side to side within the lane. This was done in a smooth rhythmic pattern.

7. Officer Lom wrote in his report that the Defendant was following another vehicle too closely. He did not give any facts to support this conclusory allegation and the video does not show such a violation.

.      .      .

**CONCLUSIONS OF LAW**

.      .      .

---

[3] Immediately before Lom activated his overhead lights, Vasquez moved over into the next lane but signaled before doing so.

2.   There may be situations when weaving within a lane, combined with the time of night and other factors, may support a finding of reasonable suspicion to justify a stop.

3.   Because of the following credibility concerns in the state's presentation, this is not such a case.   The video does not confirm, and may actually refute, the claims that the Defendant drove one handed, left his lane, drove on the shoulder, [and] followed too closely . . . .

## MOTION TO SUPPRESS

In its sole issue, the State contends the trial court erred in granting the motion to suppress based on the conclusion that the traffic stop was illegal.   According to the State, Officer Lom was justified in stopping Vasquez for suspicion of DWI because of his training, experience, and observations, namely of Vasquez weaving within the lane at that late hour.   We disagree.

### *Applicable Law*

A police officer is justified in detaining a motorist when, based on the totality of the circumstances, the officer has specific articulable facts, together with rational inferences from those facts, that lead him to conclude that the motorist is, has been, or soon will be engaged in criminal activity.   *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997).

### *Standard of Review*

We review a trial court's decision to grant or deny a motion to suppress for an abuse of discretion.   *Montanez v. State*, 195 S.W.3d 101, 108 (Tex.Crim.App. 2006).   A trial court abuses its discretion when its decision was so clearly wrong as to lie outside the zone of reasonable disagreement.   *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App. 1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g).

4

### 1. The Correct Standard: Almost Total Deference

In conducting our review, we give a trial court's determination of historical facts almost total deference, especially when they are based on an evaluation of credibility and demeanor and supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). "That same deferential standard of review 'applies to a trial court's determination of historical facts [even] when that determination is based on a videotape recording admitted into evidence at a suppression hearing.'" *State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013). "Although appellate courts may review *de novo* 'indisputable visual evidence' contained in a videotape, the appellate court must defer to the trial judge's factual findings on whether a witness actually saw what was depicted on a videotape or heard what was said . . . ." *Id*. at 570-71 [Internal citations omitted]. In other words, "the trial court's factual determinations are entitled to almost total deference so long as they are supported by the record, meaning that the video does not indisputably negate the trial court's findings." *State v. Gendron*, No. 08-13-00119-CR, 2015 WL 632215, *3 (Tex.App.--El Paso Feb. 11, 2015, no pet. h.).

We also afford the same amount of deference to a trial courts' rulings on the application of the law to the facts—so called mixed questions of law and fact—if resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We may review *de novo* "mixed questions of law and fact" not falling within this category. *Id*.

### 2. The State's Position: *De Novo* Review

The State argues we should review the trial court's ruling *de novo*, rather than under the deferential standard, because the only issue before us is whether the trial court correctly applied the law to a "concrete" set of facts not subject to credibility determinations. According to the

State, the "concrete" set of facts is Vasquez's "swerving within the lane, on the freeway, at night." The State asserts these facts are "concrete" and, thus, not subject to credibility determinations because they are conclusively established by indisputable visual evidence—the recording. For the reasons articulated below, we are not persuaded by the State's argument.

*Discussion*

Applying the almost total deference standard of appellate review, we conclude the trial court did not abuse its discretion in granting Vasquez's motion to suppress.

The critical fact in this case is the relevant significance of Vasquez's driving pattern, the explanation of which rests on the testimony of a witness the trial court found was not credible. Officer Lom testified that, based on his experience, Vasquez's driving pattern—driving one-handed, weaving within his lane, and riding onto the shoulder late at night—indicated Vasquez was intoxicated. But the trial court found Officer Lom lacked credibility because the video recording contradicted some of the events he claimed justified stopping Vasquez, and the recording does not indisputably negate the trial court's findings. Thus, the trial court reasonably could have disbelieved, and was entitled to disbelieve, the portion of Officer's Lom's testimony that, *based on his experience*, he had a reasonable suspicion Vasquez was intoxicated. Because we are not in a better position than the trial court to assess factual issues turning on credibility, and because the record supports rather than indisputably negates the trial court's factual findings, we defer to the trial court's resolution of this issue.

The State contends the trial court's credibility determinations are irrelevant in determining whether Officer Lom was justified in stopping Vasquez for suspicion of DWI because the facts critical in making that determination were conclusively established by the recording. According

6

to the State, "once [Vasquez] swerved within the lane, late at night, and was seen doing so by an officer very experienced in detecting DWI's, as conclusively shown in the video recording, and as expressly found by the trial court, [Officer] Lom was legally justified in stopping him for his operation of the motorcycle."  In support of the proposition that an experienced DWI officer may legally stop a driver for suspicion of DWI if he witnesses the driver weaving within a lane late at night, the State cites the aforementioned *Alderete v. State*.  The State's reliance on *Alderete* is misplaced.

In *Alderete*, we reversed a trial court's finding that a traffic stop was improper.  314 S.W.3d at 471, 474-75.  There, two police officers followed the appellee's vehicle for one-half mile in the early morning hours and noticed it weaving within its lane.  *Id*. at 471.  At the suppression hearing, both officers testified that, based on their training and experience, weaving within a lane late at night is a common characteristic exhibited by an intoxicated driver.  *Id*. "Consequently, the officers initiated a traffic stop, not because she violated the traffic code, but because she was swerving within her lane at a late hour, which based on their experience, indicated that she was intoxicated."  *Id*.  Although the trial court found the officers were credible, it granted the motion to suppress on the basis that they lacked authority to stop the appellee because weaving within a lane was not a traffic code violation.  *Id*.  Because the trial court accepted the State's version of events and the only question before us was whether the trial court properly applied the law to the facts it found, we reviewed the trial court's ruling *de novo*.  *Id*. at 472. Employing that standard, we concluded the trial court erred because the officers had a reasonable suspicion, based on the totality of the circumstances, including their experience, that the appellee was driving while intoxicated.  *Id.* at 474-75.

7

Our case is distinguishable. In *Alderete*, the historical facts of the events leading to the stop were uncontested and unmixed with credibility disputes. Here, as mentioned above, the converse is true. The explanation for the relative significance of Vasquez's driving pattern rested on Officer Lom's testimony. But his explanation was implicitly rejected by the trial court because it found his testimony unreliable. As we recently stated in *State v. Gendron*, "the State cannot ask us to rely on the officer's years of training and experience in interpreting the facts shown on the video when the trial court found the officer's testimony unreliable." 2015 WL 632215, at *6. Thus, although the recording shows Vasquez's vehicle drifting back and forth within its lane late at night, absent a credible witness's interpretation of the significance of those movements, we are in no position to conclude that Vasquez's movements are indicative of an impaired driver. Because the recording does not indisputably contradict the trial court's findings, its ruling is afforded almost total deference. Under that standard, we cannot say the trial court's ruling is so clearly wrong as to lie outside the zone of reasonable disagreement.

The State's issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

March 18, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

8

FILED FOR RECORD
IN MY OFFICE

2013 MAR 26 PM 12: 01

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| VS. | § | NO. 20120C07670 |
| | § | |
| SALVADOR VAZQUEZ, JR. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A hearing was held on February 21, 2013 concerning the Defendant's Motion to Suppress. The sole issue addressed was whether there was a reasonable suspicion to justify the traffic stop that led to the arrest.

Officer Lom of the El Paso Police Department testified for the state. His report was referred to but not marked or offered as an exhibit. A video of the Defendant's driving was shown and referred to but also not marked or offered as an exhibit.

The Court now makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The Defendant was travelling east bound on I-10 on a motorcycle. Officer Lom pulled up behind the Defendant and followed for 3 miles. (Tr. p.12) The video shows most of that driving.

2. Officer Lom testified that the Defendant was driving with one hand extended straight out to his side.(Tr. p.7,10)

3. The video showed that the Defendant drove with both hands on the handle bars.

4. Officer Lom wrote in his report and testified that the Defendant was going in and out of his lane and drove onto the shoulder.(Tr. p.42, 43, 45)

5. The video shows that the Defendant at all times drove within a center lane that was not even adjacent to a shoulder.

6. Both Officer Lom's testimony and the video show that the Defendant, while staying in a lane, did go from side to side within the lane. This was done in a smooth rhythmic pattern.

7. Officer Lom wrote in his report that the Defendant was following another vehicle too closely. He did not give any facts to support this conclusory allegation and the video does not show such a violation.

8. Officer Lom testified that the Defendant was swaying while the standardized field sobriety tests (SFST's) were being administered. (Tr. p.15)

9. The video shows some very slight, almost imperceptible, movement during the SFST's that could not realistically be called swaying.

10. All of these events occurred at about midnight.


## CONCLUSIONS OF LAW

1. The Fourth Amendment to the United States Constitution applies at night.

2. There may be situations when weaving within a lane, combined with the time of night and other factors, may support a finding of reasonable suspicion to justify a stop.

3. Because of the following credibility concerns in the state's presentation, this is not such a case. The video does not confirm, and may actually refute, the claims that the Defendant

drove one handed, left his lane, drove on the shoulder, followed too closely, and swayed during the SFTS's.

4. Therefore the evidence should be suppressed.

SIGNED on the 25 day of March, 2013.


_____
TOM SPIECZNY, JUDGE

cc:    Santiago Hernandez   Fax: 351-4372 ✓
        Assistant District Attorney