

| PEDRO CASTELO AMANCIO, | § | No. 08-19-00166-CR |
| Appellant, | § | Appeal from the |
| v. | § | 358th District Court |
| THE STATE OF TEXAS, | § | of Ector County, Texas |
| Appellee. | § | (D-18-1961-CR) |

## **O P I N I O N**

Appellant, Pedro Castelo Amancio, appeals his conviction of possession of a controlled substance with intent to deliver—cocaine in an amount of over four grams but less than two hundred grams. TEX.HEALTH & SAFETY CODE ANN. § 481.115(d).[1] In three issues, Appellant challenges the legality of the search and seizure, and his ultimate arrest. In Issue One, Appellant claims the trial court erred in denying his motion to suppress on grounds of lack of probable cause and reasonable suspicion. In Issue Two, Appellant asserts fundamental error for the trial court's failure to include an application paragraph in the jury charge. Lastly, Appellant challenges the factual and legal sufficiency of the evidence to support his conviction. We affirm.

## BACKGROUND

### *Factual Background*

---

[1] This case was transferred from Eastland Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedent of the Eastland Court of Appeals to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

On July 10, 2018, Detective Maycon Cuellar of the Odessa Police Department conducted a narcotics investigation outside of Appellant's residence. While surveilling, Detective Cuellar saw a red pickup truck arrive at Appellant's residence. Appellant exited his residence and got inside the red pickup truck; Detective Cuellar recognized the driver of the red pickup to be a known drug dealer in the area. Describing the encounter as "short," Detective Cuellar testified Appellant got into the passenger seat of the red pickup "for a minute or two, got out. He had something in his hand, he put it in his pocket[,]" and went back inside the house. A few minutes later, Detective Cuellar observed Appellant come back outside with what looked like a bank zipper bag in hand. Appellant got into his pickup truck and proceeded to drive off.

Detective Cuellar observed Appellant fail to signal before turning, then Detective Cuellar immediately called for a marked unit and followed Appellant from a distance. Speaking with dispatch, Detective Cuellar relayed he observed Appellant commit a traffic violation and explained he was conducting a narcotics investigation. He explained the vehicle needed to be stopped because he believed narcotics were in it. While still in pursuit and wanting to remain unnoticed by Appellant, Detective Cuellar saw Detective Rodgers, a canine unit, turn around and follow immediately behind Corporal Yuri Herrera—another officer who responded via dispatch. Corporal Herrera made her way to the same intersection as Appellant and saw him fail to stop at a stop sign. Corporal Herrera turned on her unit sirens and conducted a traffic stop. Detective Cuellar testified he observed Appellant making "furtive movements" at this time; Appellant was "moving around looking back, looking through the rearview mirror . . . ." and "grabbing the center console somehow."

The traffic stop was conducted beside a building and Detective Cuellar watched the following events transcribe from afar. With the canine unit following immediately behind Corporal

Herrera, both officers arrived simultaneously. Corporal Herrera testified she made contact with Appellant on the driver's side of the vehicle, informing him of the traffic violations as the basis for the stop. According to Corporal Herrera's testimony, Appellant agreed he ran the stop sign. Corporal Herrera requested Appellant's driver's license and insurance, asked if there were illegal narcotics in the vehicle—which Appellant denied—then asked for consent to search the vehicle, which Appellant also denied. During this interaction, Detective Rogers, the canine unit, stood on the passenger side of Appellant's vehicle.

Detective Rogers asked Appellant to exit the vehicle several times; Appellant refused each time. Appellant was eventually forcibly removed from his vehicle, placed in handcuffs, and put in the backseat of Detective Rogers' patrol unit. At this point, Corporal Herrera was in her unit running Appellant's information and writing the citation for the traffic violation while Detective Rogers had his canine make a "run" on Appellant's vehicle—a canine open-sniff around the vehicle. The canine made a positive alert to narcotics and directed Detective Rogers to the center console of Appellant's vehicle where a white bank bag containing a white substance was found. Appellant was placed under arrest and taken to the police station.

At trial, Nicole Molina, a forensic drug testing chemist for the Texas Department of Public Safety, testified the substance found in Appellant's vehicle tested positive for cocaine.

### Procedural Background

Appellant was indicted of possession of a controlled substance with intent to deliver—cocaine in an amount of four grams or more but less than 200 grams. TEX. HEALTH & SAFETY CODE ANN. § 481.115(d). At trial, Appellant filed a motion to suppress the evidence found in his vehicle and asserted he was arrested without probable cause, which rendered the search illegal. The trial court denied Appellant's motion to suppress. Following a trial, the jury returned a unanimous

3

guilty verdict assessed his punishment, enhanced pursuant to the habitual offender provision of the Penal Code, at confinement for ninety-nine years' in the Texas Department of Criminal Justice, *see* TEX.PENAL CODE ANN. §12.42(d). This appeal followed.

## DISCUSSION

### *Issues*

Appellant appeals from a jury verdict finding him guilty of possession of a controlled substance with intent to deliver. TEX.HEALTH & SAFETY CODE ANN. § 481.115(d). In three issues, Appellant challenges his conviction on grounds the trial court erred in denying his motion to suppress for lack of probable cause, asserts jury charge error, and claims the evidence is legally insufficient.

## MOTION TO SUPPRESS

In his first issue on appeal, Appellant argues the trial court abused its discretion in denying his motion to suppress the cocaine because the initial stop and subsequent search was illegal for lack of probable cause.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010). Discretion is tested under a bifurcated standard of review as articulated in *Guzman v. State*, 955 S.W.2d 85, 89-90 (Tex.Crim.App. 1997); *see Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App.—El Paso 2002, pet. ref'd). Under the bifurcated standard, we give almost total deference to the trial court's resolution of questions of historical fact, especially when those determinations are based on assessments of credibility and demeanor. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex.Crim.App. 2013); *Derichsweiler v. State*, 348 S.W.3d 906, 913

4

(Tex.Crim.App. 2011). We also afford the same deference to trial court rulings applying the law to the facts if those determinations turn on credibility or demeanor. *Arguellez*, 409 S.W.3d at 662. Mixed questions of law and fact that do not turn on the evaluation of credibility and demeanor are reviewed *de novo*. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex.Crim.App. 2013). Further, pure questions of law are reviewed *de novo*. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex.Crim.App. 2011).

When the trial court makes explicit fact-findings, we determine whether the evidence, when viewed in the light most favorable to the verdict, supports the trial court's findings. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex.Crim.App. 2006). Regardless of whether the motion was granted, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008). A reviewing court may uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App. 2007).

If the relevant facts of the case are uncontested and there are no witness credibility disputes, we apply the *de novo* standard of review. *See State v. Gendron*, No. 08-13-00119-CR, 2015 WL 632215, at *6 (Tex.App.—El Paso Feb. 11, 2015, pet ref'd)(not designated for publication)(*citing State v. Alderete*, 314 S.W.3d 469, 472 (Tex.App.—El Paso 2010, pet. ref'd), rejecting a *de novo* standard of review where the trial court found the testifying officer to lack credibility); *see also State v. Vasquez*, No. 08-13-00079-CR, 2015 WL 1316494, at *3–4 (Tex.App.—El Paso Mar. 18, 2015, pet. ref'd)(not designated for publication)(applying abuse of discretion standard when the trial court found the arresting officer's testimony to lack credibility).

***Applicable Law***

"Pursuant to the Fourth Amendment, a warrantless search of either a person or property is considered per se unreasonable subject to a 'few specifically defined and well-established exceptions.'" *McGee v. State,* 105 S.W.3d 609, 615 (Tex.Crim.App. 2003). When a warrantless search is at issue, the State carries the burden in a motion to suppress to establish applicable exceptions to the warrant requirement. *See id.* Many permissible warrantless searches are based on probable cause, such as the automobile exception in the search warrant requirement context. *See Marcopoulos v. State,* 538 S.W.3d 596, 600 (Tex.Crim.App. 2017).

Probable cause exists when the facts and circumstances known to law enforcement officers at the time of the arrest, are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175–76 (1949)[Internal quotations omitted](*quoting Carroll v. United States,* 267 U.S. 132, 161–62 (1925)). We are instructed to measure this "probabilit[y]" by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act[.]" *Brinegar,* 338 U.S. at 175. Further, the reviewing court must consider "the totality of the circumstances" known to the officer, forgoing a "divide-and-conquer" or "piecemeal" approach. *Wiede v. State,* 214 S.W.3d 17, 25 (Tex.Crim.App. 2007).

### *Analysis*

Appellant argues the State neither possessed probable cause nor reasonable suspicion to conduct a traffic stop, but instead, "undertook to <u>find</u> probable cause." Appellant is essentially asserting the "pretextual arrest" doctrine—the officers were looking to garner probable cause to stop Appellant, as opposed to already having probable cause. The State counters, arguing the Court of Criminal Appeals has rejected this doctrine and, in its place, has adopted an objective approach. We agree.

At the motion to suppress hearing, Corporal Herrera, the officer who conducted the traffic stop, testified to the following:

Q. Had a confidential informant called you to tip you off about [Appellant]?

A. I had information from one of our detectives.

Q. Okay. Who was that?

A. Detective Cuellar. He is here and present today.

Q. Okay. So when did you get that information from that detective?

A. Prior to my stop.

Q. Okay. So he told you to stop the car?

A. He told me to find probable cause to stop the car.

In addition to the officers' subjective intent allegedly rendering Appellant's stop unlawful, Appellant also challenges the validity of the stop, arguing that because Corporal Herrera did not participate in the surveillance of Appellant's home, she lacked probable cause. Although it is true Corporal Herrera was not involved in the surveillance, this neither negates nor weakens the probable cause she possessed. Corporal Herrera testified she heard Detective Cuellar dispatch a patrol unit and request a traffic stop of Appellant. She was in the area at the time and testified to observing Appellant fail to stop at a stop sign, which gave her probable cause to conduct a traffic stop. In *Walter v. State*, the Court of Criminal Appeals rejected the "pretextual arrest" doctrine, explaining:

> We, too, rejected the notion of pretext stops . . . . We explained that the phrase 'pretext arrest' was used to refer to an 'objectively' valid stop for an allegedly improper reason. In line with Supreme Court and federal authority, we abandoned the 'pretext arrest' concept in favor of a purely objective analysis.

28 S.W.3d 538, 543 (Tex.Crim.App. 2000). The Court codified the standard, ruling, "as long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a

person for that violation . . . regardless of the officer's subjective reasons for the detention." *Id*. [Internal quotations omitted].

Accordingly, because failure to stop at a stop sign is a recognizable traffic offense in Texas, the subjective intent of the officers in this case is irrelevant. *See id*.; *also see* TEX.TRANSP.CODE ANN. §§ 544.010, 545.151, 545.153. Because Corporal Herrera observed the traffic violation, we find she possessed probable cause to conduct the traffic stop.

Appellant also argues the traffic stop, beyond issuance of the traffic citation, was unreasonable and overly intrusive. We disagree. As articulated by the Supreme Court and as applied by the Court of Criminal Appeals, "[a]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Davis v. State*, 947 S.W.2d 240, 243 (Tex.Crim.App. 1997)(*citing Florida v. Royer*, 460 U.S. 491, 500 (1983)). This limitation has been interpreted to mean that once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Id*. [Internal quotation omitted](*citing Ohio v. Robinette*, 519 U.S. 33, 41 (1996)(Ginsberg, J., concurring)). Detention may be prolonged so long as there is reasonable suspicion that another offense was or is being committed. *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex.App.—Fort Worth 2007, pet. ref'd).

Appellant reasons, because the initial detention was longer than reasonably necessary to effectuate the purpose of the traffic stop and was not supported by probable cause or reasonable suspicion, the prolonged detention violated his Fourth Amendment right. However, the record indicates the initial detention was still ongoing when the canine conducted the open-air sniff that led to the seizure of the cocaine. The detention was not prolonged considering Corporal Herrera and the canine unit arrived simultaneously. After Appellant refused to exit the vehicle, and after forcibly being removed, the canine made a positive alert and cocaine was seized from Appellant's

8

vehicle. All the while, the traffic citation had *still* not yet been issued; Corporal Herrera was in her patrol unit running Appellant's information and writing the citation. Thus, Appellant's detention did not last longer than was necessary to effectuate the purpose of the stop.

The traffic stop was supported by probable cause and Appellant's detention was not prolonged in violation of the Fourth Amendment. We find the trial court did not abuse its discretion in denying Appellant's motion to suppress. Issue One is overruled.

## CHARGE ERROR

In Issue Two, Appellant argues the trial court committed fundamental error by failing to include an application paragraph that defined the tendered Article 38.23 instruction in the jury charge.

### *Standard of Review*

Article 36.19 of the Texas Code of Criminal Procedure governs the standard for reversal on appeal in Texas regarding the requirements of Article 36.14, which relate to the charge of the court. TEX.CODE CRIM.PROC.ANN. art 36.19. The judgment shall not be reversed unless the error appearing from the record was "calculated to injure the rights of [the] defendant." TEX.CODE CRIM.PROC.ANN. art. 36.19.

In reviewing charge error, we must first determine whether error actually exists, then evaluate whether the error was harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(opin. on reh'g). If error exists, the harm analysis differs depending on whether the charge was timely and properly objected to. *Id*. at 171. When the defendant has properly objected, jury charge error requires reversal when the reviewing court finds "some harm" to his rights. *Id*. The degree of harm must be actual, not just theoretical, and must be evaluated "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative

9

evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id*. at 171-74.

### *Applicable Law*

Under Article 38.23(a) of the Texas Code of Criminal Procedure, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM.PROC.ANN. art. 38.23(a). When "the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." TEX.CODE CRIM.PROC.ANN. art. 38.23(a). Thus, a defendant is entitled to a jury instruction under Article 38.23 if three requirements are met: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct. *See Hamal v. State,* 390 S.W.3d 302, 306 (Tex.Crim.App. 2012).

### *Analysis*

An Article 38.23 instruction protects the fundamental notion that evidence obtained by an officer in violation of the laws of the U.S. Constitution or the State of Texas shall not be admitted in evidence against an accused in a criminal trial. TEX.CODE CRIM.PROC.ANN. art. 38.23(a). Accordingly, Article 38.23 requires the jury be instructed to disregard evidence when there is a factual issue as to whether the proffered evidence was legally obtained. *See id*. Appellant's tendered instruction requested conformity with Article 38.23. There must be a genuine dispute about a material issue of fact to warrant an Article 38.23 instruction, and if other undisputed facts

10

suffice to support the lawfulness of the challenged conduct, the alleged disputed fact is not material. *Madden v. State*, 242 S.W.3d 504, 510-513 (Tex.Crim.App. 2007).

Appellant argues an Article 38.23 instruction was merited, along with an application paragraph defining the instruction, because the officers testified that they were "'looking for probable cause to stop the vehicle' as opposed to having probable cause . . . ." For reasons articulated earlier and having overruled Issue One, we find no basis in this argument. The record does not demonstrate any factual dispute exists as to the legality of the stop or the manner in which the cocaine was seized. The State argues the evidence, namely, the testimonies of the officers, is uncontroverted, and we agree. Testimony was offered that Appellant admitted to committing the traffic violation. Appellant, now on appeal, points to nothing in the record to contradict Corporal Herrera's testimony regarding the propriety of the traffic stop. Appellant has failed to raise a fact question as to whether his detention was supported by probable cause.

Because Appellant has not satisfied the first requirement warranting an Article 38.23 instruction—(1) the evidence heard by the jury must raise an issue of fact—we find Appellant was not entitled to an Article 38.23 instruction. Furthermore, because Appellant was not entitled to an Article 38.23 instruction, it follows Appellant was not entitled to an application paragraph regarding its instruction to disregard unlawfully obtained evidence. *See, e.g., Jones v. State*, No. 01-03-00161-CR, 2004 WL 396443, at *3 (Tex.App.—Houston [1st Dist.] Mar. 4, 2004, pet. ref'd) (mem. op., not designated for publication)(where defendant "did not present a factual dispute" and "thus [] was not entitled to an article 38.23 instruction," "trial court did not err by failing to give [his] requested article 38.23 application paragraph in the charge.").

Thus, the trial court did not err in failing to include an application paragraph within the tendered Article 38.23 instruction. *See Madden*, 242 S.W.3d at 513 (finding "no error at all because

11

there was no conflict in the evidence that raised a disputed fact issue material to the legal question of" detention). Because we find no error, we need not conduct a harm analysis. Issue Two is overruled.

## *Analysis*

## **LEGAL SUFFICIENCY**

In Issue Three, Appellant asserts the evidence is factually and legally insufficient to support his conviction beyond a reasonable doubt.

### ***Standard of Review & Applicable Law***

Under the Due Process Clause of the U.S. Constitution, the State is required to prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In *Brooks*, the Texas Court of Criminal Appeals held the only standard a reviewing court should apply when examining the sufficiency of the evidence is the legal sufficiency standard articulated in *Jackson*, which requires affording deference to the jury's credibility and weight determinations. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010). The critical inquiry in a legal sufficiency challenge is whether the evidence in the record could reasonably support a conviction of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

When reviewing the legal sufficiency of the evidence, we must view all of the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). A lack of direct evidence is not dispositive on the issue of the defendant's guilt; guilt may be established by circumstantial evidence alone. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). We measure the evidence by the

12

elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.—El Paso 2009, no pet.)(*citing Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

We bear in mind that the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume the fact finder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014) (*citing Jackson*, 443 U.S. at 319). A reviewing court may not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Our only task under this standard is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Appellant was charged with possession of a controlled substance, cocaine, with intent to deliver under the Texas Health and Safety Code § 481.115(d). The relevant statute states:

> (a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1 . . . .
>
> .        .        .
>
> (d) An offense under Subsection (a) is a felony of the second degree if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams.

TEX.HEALTH & SAFETY CODE ANN. § 481.115(a), (d).

In possession of illegal drug cases, Texas courts have long utilized what is known as the "affirmative links" rule. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). An accused

13

must have exercised actual care, control or custody of the substance, and also must have been conscious of his connection with it and have known what it was—this affirmatively links the accused to the illegal substance and suffices to prove knowledge. *Id*. Evidence of the affirmative link may be either direct or circumstantial, but it must establish that the accused's connection with the illegal substance was more than just fortuitous. *Id*.

## *Analysis*

Appellant argues the evidence is legally and factually insufficient to establish possession because the State failed to prove Appellant had care, custody, control, or management of the cocaine.[2] Appellant specifically claims, "With the suppression of the contraband and the resulting chemical test results, the State's case is factually insufficient." We interpret this to mean, Appellant, now on appeal, is requesting we disregard evidence submitted into evidence at trial in our sufficiency analysis. This we cannot do. As a reviewing court, we must consider *all* of the evidence in the light most favorable to the verdict—whether the evidence was properly admitted or not. *See Salinas*, 163 S.W.3d at 737; *see also Osban v. State*, 726 S.W.2d 107, 111-12 (Tex.Crim.App. 1986)*, rev. on other grounds, Heitman v. State*, 815 S.W.2d 681(Tex.Crim.App. 1991)("The Court of Appeals also erred in excluding from its review of the sufficiency of the evidence those items that the Court held had been improperly admitted. The Court of Appeals should have considered all the evidence in determining its sufficiency to support the conviction."). The Court of Criminal Appeals has addressed this very issue, declaring that the admission of unlawfully seized evidence is trial error, and the proper remedy is not to strike the evidence and

---

[2] Appellant incorrectly asserts a *factual* insufficiency claim; the court in *Brooks* abandoned the factual sufficiency standard, codifying it to a standard of legal sufficiency. 323 S.W.3d at 915 (Cochran, J., concurring op.)("To declare the evidence factually insufficient necessarily turns an appellate judge, viewing only the cold written record, into a self-appointed thirteenth juror with absolute veto power over the twelve citizens who actually saw the witnesses, heard the evidence, and reached a rational, reasonable verdict.").

conduct a sufficiency analysis, but to reverse the conviction and remand the cause for a new trial. *Adams v. State*, 639 S.W.2d 942, 943 (Tex.Crim.App. 1982). Having already ruled the trial court did not error in denying Appellant's motion to suppress, we move forward with our sufficiency analysis.

A hypothetically correct jury charge would ask whether Appellant: (1) exercised control, management, or care over the substance; and (2) knew the matter possessed was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006). Here, Appellant operated the vehicle, and the evidence established he was in close proximity to where the cocaine was located—the center console. Although mere presence by itself is insufficient, when evidence is "within arm's reach" of the accused, the Court of Criminal Appeals has held it "constitutes two extremely strong 'presence' and 'proximity' links." *Evans*, 202 S.W.3d at 163. Detective Rogers testified to his observations of Appellant during the traffic stop; he explained he observed Appellant's right hand move inside and around the center console area, which he testified is consistent with either concealing illicit narcotics or weapons. After the open-air sniff, the canine made a positive alert to narcotics, then directed Detective Rogers to the center console of Appellant's vehicle where the cocaine was found. Appellant was also found with a large sum of currency and the key to the locked bank bag where the cocaine was found. Moreover, Detective Cuellar testified that after Appellant was *Mirandized* once at the police station, Appellant admitted he obtained the cocaine in order to sell it and "get back on his feet." Detective Cuellar continued to testify in detail about the process, explaining that according to Appellant's admissions, Appellant "didn't have to pay anything for this dope" because it was "fronted" to Appellant and he "was going to make a profit off of it." The jury heard the testimony of Corporal Herrera, Detective Cuellar, and Detective Rogers, who all played significant roles in the events leading to the search and ultimate seizure.

15

The jury also heard from the forensic drug testing chemist who testified the substance found in Appellant's vehicle tested positive for cocaine.

As the ultimate trier of fact, the jury was free to judge the weight and credibility of the evidence and we defer to that resolution. *Dobbs*, 434 S.W.3d at 170. Our only task is to determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Isassi*, 330 S.W.3d at 638. Based on the evidence, the following testimony and the reasonable inferences drawn therefrom, we deduce a rational jury could have concluded Appellant: (1) exercised control, management, or care over the substance; and (2) knew the matter possessed was contraband. *See Evans*, 202 S.W.3d at 161. We find Appellant's link to the cocaine was more than fortuitous. The evidence is legally sufficient to support Appellant's conviction. Issue Three is overruled.

**CONCLUSION**

For these reasons, we affirm.


May 12, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

16